## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### Southern Division

AUG 0 1 1997

| | | |
|---|---|---|
| Johnny Puccio, | ) | |
| Plaintiff(s); | ) | |
| | ) | |
| -vs.- | ) | No. CV 95-P-2825-S |
| | ) | |
| City of Birmingham, | ) | |
| Defendant(s). | ) | |

ENTERED

### OPINION

After consideration of the material submitted and for the following reasons, the Defendant City of Birmingham's ("City") Motion for Summary Judgment is hereby GRANTED.

### Facts[1]

The Plaintiff Johnny Puccio ("Puccio"), a white male, has been a firefighter with the Birmingham Fire and Rescue Service ("BFRS") since 1977. Puccio is currently assigned as a nozzleman at Station No. 7.

As with all vacancies, the City requests a list of eligible candidates from the Jefferson County Personnel Board ("Personnel Board") when the City anticipates hiring or promoting into new or vacant positions. The Personnel Board administers a written test to candidates and the eligible candidates are then certified to the City. Only the names of the candidates are sent to the City. No information regarding race or test scores is forwarded. BFRS has a written policy outlining the selection process. After the BFRS receives the list, a standing committee reviews the candidates on various criteria including personal interviews, work history, qualifications, and

---

1. The recitation of "facts" is based upon the presented materials viewed in the light most favorable to the Plaintiff.

15

credentials. After this review process, the committee forwards the list of candidates designating each as acceptable or unacceptable for promotion. These recommendations are then reviewed by the Fire Chief's executive staff. The executive staff reviews all the candidates considering the committee's recommendations and the department's staffing needs. The executive staff then makes recommendations to the Fire Chief. The Fire Chief then reviews all the candidates again. The Fire Chief then makes his final recommendations to the Mayor who then appoints the Fire Lieutenant.

Puccio took the Fire Lieutenant's examination. After taking the test, Puccio was certified by the Personnel Board to the City for potential promotion effective on January 23, 1993, July 24, 1993, October 16, 1993, and August 6, 1994. Puccio was not promoted on these occasions. Puccio filed a charge of discrimination with the EEOC on September 30, 1994. Puccio filed this lawsuit on November 3, 1995. Puccio alleges that his denial of promotion was the result of racial discrimination in violation of Title VII and 42 U.S.C. § 1943. Puccio seeks both punitive and compensatory damages.

**Analysis**

I. Denial of Promotions in 1993

A precedent to filing a lawsuit based on Title VII is the filing of an EEOC complaint about the alleged discrimination within 180 days of the discriminatory act. 42 U.S.C. § 2000e-5(e)(1); *Thomas v. Kroger Co.*, 24 F.3d 147 (11th Cir. 1994). There is no dispute that Puccio failed to file any such complaint until November 3, 1995, more than two years after the denial of the promotions in 1993. Puccio argues that the Court should consider these denials as timely based on the doctrine of continuing violation. However, the doctrine of continuing violation is

2

inapplicable where "the employer engaged in a discrete act of discrimination more than 180 days prior to the filing a charge with the EEOC by the employee...." *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 658 (11th Cir. 1993). The promotions were conducted in a public, well publicized manner. Puccio obviously knew about the availability of positions because he sat for the examinations and participated in the interview process. Each promotion was a discrete, specific act which Puccio could easily identify. The evidence which has been submitted indicates Puccio approached Chief Brennan after he was not selected for one of the promotions in 1993 and inquired about the reasons. This indicates that Puccio was aware of potential problems immediately after the denial of these promotions and could easily have filed an EEOC charge at that time. Therefore, the Title VII claims based on the failure to promote in 1993 are untimely. As such, the Defendant's Motion for Summary Judgment is due to be granted on the Plaintiff's claims arising from the 1993 rounds of promotions.

The statute of limitations for 42 U.S.C. § 1983 claims is two years. *Jones v. Preuit & Mauldin*, 876 F.2d 1480 (11th Cir. 1989). Puccio filed his complaint on November 3, 1995. Therefore, the actions that occurred prior to November 3, 1993 are barred by the statute of limitations and are untimely.[2] The Defendant's Motion for Summary Judgment is due to granted on all the Plaintiff's § 1983 claims arising from the rounds of promotions in 1993.

---

2. Because he has not provided any argument on the issue, Puccio apparently does not challenge the Motion as to application of the statute of limitations on the § 1983 claims.

3

II.  Denial of Promotions in 1994

A.  Disparate Treatment Claim

Under the *McDonnell Douglas*[3] analysis of disparate treatment in violation of Title VII a plaintiff must establish a prima facie case of discrimination in disparate treatment by showing that he is a member of a protected class; that he was qualified for and applied for the promotion; he was rejected despite his qualifications; and equally or less qualified employees who were not members of the protected class were promoted. *Batey v. Stone*, 24 F.3d 1330 (11th Cir. 1994). If the plaintiff meets this showing, the burden of production shifts to the defendant to articulate a legitimate non-discriminatory reason for the decision. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981). If the defendant meets this burden, the sole inquiry becomes "whether [the] plaintiff has proven 'that the defendant intentionally discriminated against' [him or her] because of [his or her] [race]." *Batey*, 24 F.3d at 1334, n. 12 (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502 (1993)). The plaintiff may accomplish this by establishing that the proffered reason is a pretext, with either direct or circumstantial evidence, by a preponderance of the evidence that the employer had discriminatory intent. *Id.* at 1334.

The City argues that Puccio cannot make a prima facie case because he cannot establish that he was equally or more qualified than the candidates chosen for promotion. The City further argues that even if Puccio can make a prima facie case, he cannot rebut or produce substantial evidence that the proffered reason was pretextual and from which an inference can be drawn that the City intended to discriminate against him. The City's articulated reason for promoting the

---

3. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).

4

three black males that Puccio complains about was their superior training, education and skills which the BFRS found desirable in Fire Lieutenants.   In light of the evidence and briefs submitted, the Court agrees with the City.   Because Puccio fails to produce any evidence or argument on the issue of disparate treatment, the City's Motion for Summary Judgment on the issue of disparate treatment is due to be granted.

B.  Disparate Impact

A plaintiff can establish a case of disparate impact if he can demonstrate that the defendant employed a facially neutral employment practice which was not justified by a legitimate business goal and which had an adverse impact on a racial group of employees. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112 (11th Cir. 1993).  To establish a prima facie case, the plaintiff must identify a significant statistical disparity between the number of protected class candidates available in a relevant qualified pool and those selected, and a specific employment practice that is allegedly responsible for the disparity. *Id*.  The plaintiff must also demonstrate "that it is the application of a specific or particular employment practice that has created the disparate impact under attack." *Ward Cove Packing Co., Inc. v. Antonio,* 490 U.S. 642, 657 (1989).

The City argues that Puccio cannot make a prima facie case because he can neither show that a statistically significant disparity exists nor can he identify the specific employment practice allegedly responsible for the disparity.  First, the City identifies the pool of applicants from which the final promotions are made as the list of firemen which were certified to the City by the Personnel Board.  This list contained 31 names (21 white and 10 black).  After engaging in the selection process as described above, the City selected 8 white and 3 black candidates, resulting in a selection rate of 38.1% and 30% respectively.   The City argues that, therefore, there is no

significant statistical disparity. Puccio argues that the applicant pool is not really the 31 applicants certified to the Board but rather the applicant pool should be the list of "acceptable candidates" which is forwarded after the standing committee's review of the qualfied candidates certified from the Personnel Board. In this case, eighteen candidates were listed as acceptable (fourteen white and four black). Puccio argues that the "acceptable candidates" were the only ones who were actually considered. The City produces evidence that both acceptable and unacceptable candidates were reviewed by both the executive staff and the Fire Chief.

The Court agrees with the City's analysis of the relevant applicant pool. Under the *Wards Cove* analysis, the proper comparison is between the positions in question and the "qualified population" in the market. *Wards Cove* at 650. The Personnel Board certified 31 candidates to the City. All of these applicants were considered qualified for the positions. BFRS could only promote eleven individuals. It is reasonable that BFRS would have to perform some sort of evaluation of the candidates in order to arrive at the eleven that were promoted. There is no evidence nor any argument that the initial review by the standing committee was flawed. Instead, Puccio simply argues that the relevant pool should only contain those people who passed through the first phase of the process as acceptable. Puccio ignores the fact that only 40% of the black candidates originally certified as qualified were deemed to be acceptable whereas 66.66% of the white candidates were deemed acceptable. As such, the pool that Puccio wants the court to consider as relevant could be seen as having a disparate impact on blacks. Puccio makes no compelling argument as to why the relevant pool should be considered only after the first phase of the selection process rather than at the start of the selection process. Therefore, the Court finds that there is no significant statistical disparity which has adversely impacted white candidates

6

and the Defendant's Motion for Summary Judgment is due to be granted.[4/]

**Conclusion**

For the forgoing reasons, the Defendant's Motion for Summary Judgment is hereby

GRANTED.

Dated: *August 1, 1997*

Chief Judge Sam C. Pointer, Jr.

Service List:
James P. Alexander
Anne R. Yeungert
Arnold W. Umbach, III
Raymond Fitzpatrick

---

4.  The Defendant also argues that Puccio fails to identify a particular employment practice which has recreated the disparate impact.  Because the Court has determined that no significant statistical disparity exists, it does not reach this issue.